**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DAVID J. GARRETT, SR.,** | : | |
| **Plaintiff,** | : | **Civil Action No. 1:15-01189** |
| **v.** | : | |
| | | **(Judge Mannion)** |
| **NANCY BERRYHILL**[1] **,** | : | |
| **Acting Commissioner of** | | |
| **Social Security** | : | |
| **Defendant.** | : | |

## MEMORANDUM

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner"), denying plaintiff David J. Garrett's application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§401-433. The court has jurisdiction pursuant to 42 U.S.C. §405(g). Currently before the court are the parties' cross-motions for summary judgment. (Doc. 16, Doc. 18). For the reasons set forth below, plaintiff's motion will be denied and defendant's motion will be granted. Thus, the Court will affirm the Commissioner's decision.

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security as the defendant in this suit.

1

## I.    BACKGROUND[2]

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. (Tr. 25).[3] In order to establish entitlement to disability insurance benefits, plaintiff was required to establish that he suffered from a disability on or before that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a); *see Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

Plaintiff was born on December 9, 1966. (Tr. 225). He was a younger individual when the Administrative Law Judge ("ALJ") rendered his decision in this case. Plaintiff has an 11th grade education and, he attended special education classes. (Tr. 240, 365-367). His past work included a batch

---

[2]The court notes that since the ALJ fully developed the record and since the ALJ, (Doc. 8-2 at 25-40), as well as the parties have stated the full medical history of plaintiff in their respective filings, the court will not fully repeat it herein. Rather, the court discusses below plaintiff's medical history to the extent it is relevant to plaintiff's instant issues raised in this appeal. *See* Durden v. Colvin, 191 F.Supp.3d 429, 449 (M.D.Pa. 2016)("In the social security context, the ALJ must develop the record and provide an explanation for how evidence in the record is treated."). In this case, neither party contends that the ALJ failed to fully develop the record.

[3]References to "Tr. __" are to pages of the administrative record filed by the defendant along with the Answer (Doc. 8).

blender, furniture installer and technician, plant worker, and truck unloader. (Tr. 37, 227-232). Plaintiff stopped working in October 2009 when he was laid off. Plaintiff alleges that on May 1, 2011, he became disabled and was unable to work.

Plaintiff filed a claim for DIB on May 11, 2011, alleging disability commencing on May 1, 2011. He was 44 years old at the time. (Tr. 214). He alleged that he was disabled due to several conditions, to wit: asthma; poor sleep; bilateral ulnar neuropathy; bilateral carpal tunnel syndrome; muscle wasting in arms and hands; bilateral loss of dexterity in hands with numbness and tingling; muscle cramps, spasms and fasciculation in the whole body; arthritis; weakness in the hands, arms and legs; severe pain and fatigue; learning disabilities; and auditory problems. (Tr. 239, 252). The agency denied plaintiff's application on March 23, 2012. (Tr. 176). Plaintiff filed a request for reconsideration and, on September 19, 2012, the agency denied his request. (Tr. 183). Plaintiff then requested a hearing before an ALJ, which was held on June 10, 2014. (Tr. 46).

The ALJ issued a decision on August 7, 2014. The ALJ found that plaintiff was not disabled within the meaning of the Social Security Act from May 1, 2011 through the date of his decision. (Doc. 8-2, Tr. 25-39). Plaintiff filed a request for review.

On October 22, 2015, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr.

1). Since plaintiff exhausted his administrative remedies, he initiated the present action on December 22, 2015, appealing the final decision of defendant. (Doc. 1).

Plaintiff appeals the ALJ's determination on three grounds: 1. Whether the ALJ erred in his credibility findings regarding plaintiff's testimony: 2. Whether the ALJ erred in evaluating the opinions of plaintiff's treating physicians; 3. Whether the ALJ erred in his Residual Functional Capacity ("RFC") findings in determining that there was other work that plaintiff could perform, i.e., substantial evidence does not support the ALJ's RFC assessment.

As relief, plaintiff seeks the court to reverse the Commissioner's decision and remand with instructions to award benefits, or in the alternative, to remand his case to the Commissioner for further proceedings.

## II.    STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel,

[181 F.3d 358, 360. (3d Cir. 1999)](), [Johnson, 529 F.3d at 200](). It is less than a preponderance of the evidence but more than a mere scintilla. [Richardson v. Perales, 402 U.S. 389, 401 (1971)]().

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." [42 U.S.C. §432(d)(1)(A)](). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

[42 U.S.C. §423(d)(2)(A)]().

In the present case, there are cross-motions for summary judgment. "In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c)." Antoniolo v. Colvin, 208 F.Supp.3d 587, 595 (D.Del. 2016)  (citing Woody v. Sec'y of the Dep't of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir.1988).

## III.    DISABILITY EVALUATION PROCESS

The plaintiff must establish that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Fargnoli*, 247 F.3d at 39 (quoting 42 U.S.C. §423(d)(2)(A)).

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. *See also* Plummer , 186 F.3d at 428. If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See

20 C.F.R. §404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process to conclude that the plaintiff was not disabled within the meaning of the Act. The ALJ found that plaintiff has not engaged in substantial gainful activity since May 1, 2011, the alleged onset date. Next, the ALJ determined that plaintiff suffered from severe impairments, including the following: obesity; bilateral carpal tunnel syndrome; degenerative disc disease of the cervical and lumbar spines; ulnar neuropathies of the elbows; left wrist ulnar neuropathy; right elbow osteoarthritis; right shoulder impairment; migraines; fasciculation disorder; hypertension; hyperlipidemia; hypothyroidism; sleep apnea; learning disorder; anxiety disorder; and depression. (Tr. 27). The ALJ also determined that the plaintiff's allergic rhinitis, mild left ventricular hypertrophy; subependymoma; and auditory problems were non-severe impairments. (Tr. 27-28).

The ALJ then found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 28).

The ALJ found that plaintiff had the RFC to perform less than full range of sedentary work with restrictions, namely: no climbing activities; no work at unprotected heights or dangerous machinery; no work overhead; limited to occasional stooping or squatting; no crawling; cannot engage in frequent reaching or handling as required on an assembly line; and limited to simple

7

repetitive job tasks.[4]  (Tr. 31).

The ALJ found that plaintiff was unable to perform any of his past relevant work which all was at the heavy exertional level and semi-skilled. He indicated that plaintiff was a younger individual (i.e., 44) at his alleged disability onset date. (Tr. 37-38).

Additionally, the ALJ afforded limited weight to the medical opinions, including the state agency consultants' opinions that plaintiff could perform work at the light exertional level with limitations, as well as the opinions of plaintiff's treating physicians, Dr. Bryan Simmons, Dr. Lee P. Dresser, Dr. John Ashby, Dr. Jason Silversteen, and Dr. Charles Esham. The ALJ recognized that Dr. Simmons, Dr. Dresser, Dr. Ashby, and Dr. Silversteen opined that plaintiff could not work on a full-time basis and was disabled for periods of time. The plaintiff testified at the hearing, and the ALJ found that his allegations regarding his symptoms and limitations were not entirely credible. (Tr. 35-37).

Also, at the hearing, the ALJ posed a hypothetical question to a vocational expert ("VE") that was based on a person who could perform

---

[4]Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §416.967(a). Even though a sedentary job is one which involves sitting, a certain amount of walking and standing is frequently necessary to perform the job duties. Thus, jobs are still considered sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* SSR 83-10.

sedentary work with additional restrictions including no climbing activities, no work at unprotected heights or dangerous machinery, no overhead work, occasional stooping or squatting, no crawling, enjoys gross use of hands, should not engage in frequent reaching or handling, and limited to simple repetitive job tasks. The VE testified that such a person would be able to perform work as a call center operator and surveillance monitor. (Tr. 69-70).

The ALJ then determined that based on plaintiff's age, education, work experience and RFC, plaintiff was capable of performing other work in the national economy that existed in significant numbers, namely, a call center operator and surveillance monitor. (Tr. 38).

## IV. DISCUSSION

### A. Plaintiff's Credibility

As his first claim that the ALJ erred, plaintiff contends that the ALJ's credibility finding that his statements regarding his severe pain were not entirely credible was not supported by substantial evidence. In particular, plaintiff contends that the ALJ failed to adequately assess all aspects of his pain from his multiple impairments in his credibility findings pursuant to SSR 96-7p. Plaintiff argues that his treatment notes, exam findings and diagnostic testing show that he suffered from severe disabling pain due to his conditions, including cervical disc disease, lumbar disc disease and radiculitis, bilateral carpal tunnel and ulnar neuropathy and right shoulder rotator cuff tear.

9

Specifically, plaintiff states that the ALJ's credibility finding: (1) contained contradictions; (2) ignored significant diagnostic testing; and (3) greatly minimized the multitude of positive findings on exam. Plaintiff maintains that" [t]he ALJ focused on other exam findings that were normal while not appreciating the signs the symptoms of severe, unrelenting nerve, discogenic and muscle pain." (Doc. 17 at 19, Doc. 21 at 4).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, 2000 WL 288246 (E.D. Pa. March 7, 2000).

When considering a plaintiff's subjective complaints of pain, the ALJ must engage in a two-step analysis. First, the ALJ must determine if the alleged disabling pain could reasonably result from the medically determinable impairment; and second, the ALJ must consider the intensity and persistence of the claimant's disabling pain, and the extent to which it affects his ability to work. *See* Diaz v. Commissioner of Social Security, 39 Fed. App'x 713, 714 (3d Cir. June 12, 2002).

"[A]n ALJ must give serious consideration to a claimant's subjective

complaints of pain, even where those complaints are not supported by objective evidence." Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985). Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067–68 (citing Carter v. Railroad Retirement Bd., 834 F.2d 62, 65 (3d Cir.1987); Ferguson, 765 F.2d at 37).

Although, the ALJ is charged with the responsibility of determining a claimant's credibility, *see Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." SSR 96-7p. "Credibility determinations are the province of the ALJ and should only be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305 at *3 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schwieker*, 717 F.2d 871, 873 (3d Cir. 1983); *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (an ALJ's credibility determination is entitled to great deference). An ALJ is not required to specifically mention relevant Social Security Rulings. *See Holiday v. Barnhart*, 76 F. App'x 479, 482 (3d Cir. 2003). It is enough that the ALJ's analysis by and large comports with relevant provisions. *Id.*

The ALJ stated that plaintiff's impairments could reasonably cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. The ALJ provided a detailed explanation, based on the entire record, to support his determination that plaintiff's allegations regarding his symptoms and limitations were not entirely credible. (Tr. 33-37). The ALJ did in fact credit some of plaintiff's allegations regarding his physical and mental impairments in his RFC determination, and explained that "diagnostic testing has indicated abnormalities pertaining to the cervical spine, lumbar spine, and right elbow" and, "[has shown] findings consistent with neuropathies, elbows, wrists, and acute and chronic left S1 radiculopathy." (Tr. 33). Thus, the ALJ limited plaintiff to a range of sedentary work with postural and manipulative restrictions, and limited plaintiff to work that involves only simple repetitive tasks.

The ALJ also thoroughly reviewed the medical evidence of record, and he relied upon these records and objective medical tests, all of which were discussed in great detail in his decision, as well as the plaintiff's daily activities. In particular, the ALJ considered several examination notes of plaintiff's physicians which showed "normal strength in [plaintiff's] upper and lower extremities, full range of motion in all joints, a negative Romberg test, normal sensation in his lower extremities, coordination and reflexes within normal limits, normal sensation in his lower extremities, normal vibratory

sensation in the upper and lower extremities, normal sensation to light touch in lower and upper extremities, good full supination and pronation of his left upper extremity, normal cranial nerve testing, a normal gait, station, and tandem walk, and no muscle atrophy." (Tr. 33).

The ALJ considered the opinions of state agency expert physicians that plaintiff could perform a range of light work, but he gave limited weight to these opinions. (Tr. 36). Indeed, the ALJ stated that he provided plaintiff with an RFC determination that "afford[ed] the claimant[ ] maximum credibility regarding his subjective complaints" which was consistent with the medical records. (Tr. 36).

Plaintiff argues that the ALJ noted a normal EMG of the lower extremities from August 2012 and failed to "reconcile why he discounted a subsequent EMG done in May 2013 which showed acute and chronic S1 radiculitis …" (Doc. 17, at 19). In his decision, the ALJ found that diagnostic testing showed that plaintiff had "neuropathies, elbows, wrists, and acute and chronic left S1 radiculopathy" as well as limited range of motion in his cervical and lumbar spines, and right elbow and shoulder. The ALJ also indicated that "[a]n EMG of [plaintiff's] lower extremities was [ ] interpreted as normal." (Tr. 33). The ALJ concluded that the "collective evidence" was not consistent with the degree of symptoms and limitations to which plaintiff stated he experienced. (Tr. 33).

Plaintiff also contends that the ALJ rejected his limitations on manual

13

dexterity without a proper basis. (Doc. 17 at 19). The ALJ found that there "[were] no persistently, abnormal clinical examination findings suggestive of manual dexterity limitations." (Tr. 33). However, the ALJ only made this finding after he considered objective testing that showed plaintiff had neuropathies and diminished sensation in the fingers of his right hand along with thenar muscle atrophy of the hands. (Tr. 33). The ALJ also acknowledged that plaintiff had some dexterity limitation and in his RFC he accounted for this by precluding plaintiff from jobs that require any frequent reaching and handling or any overhead work. (Tr. 31).

Further, as defendant points out, (Doc. 19 at 15), "after surgical procedures, by January 2012, Plaintiff exhibited a full range of motion [of the shoulder], elbow, wrist and fingers despite a mild persistent hypothenar weakness and some decreased sensation, which would take longer to improve." (Tr. 542). And that "[i]n May of 2012, the orthopedist reported that Plaintiff was 'back to most of his activities'" and stated that "he is doing well." (Tr. 604).

Plaintiff also contends that the ALJ erred by not finding his attention and concentration abilities were so severe that he could not perform any work. The ALJ found that plaintiff's medical records were "replete with evidence [ ] [showing that he was] persistently being assessed as alert and oriented and having normal attention and concentration." (Tr. 35). The ALJ also properly included limitations for plaintiff due to attention and concentration problems

in his RFC by limiting him to simple repetitive job tasks. (Tr. 31). Moreover, as the ALJ indicated, the record showed that plaintiff's "mental status examinations have been essentially normal", and that plaintiff's clinical exam findings regarding his concentration were "routinely noted to be normal" (Tr. 34, 37).

Further, plaintiff contends that the ALJ erred by failing to accept his allegation that he could not concentrate or maintain attention due to pain that was reflected in his psychiatrist's notes. (Doc. 17 at 19-20). However, as defendant indicates, (Doc. 19 at 16), and as the ALJ recognized, plaintiff's "psychiatric treatment notes confirms that [his] attention and concentration remained intact." The notes also reflect that plaintiff's judgment, insight, and memory were in tact despite his depressed mood. (Tr. 684, 692, 701, 715, 720).

Finally, plaintiff argues that the ALJ erred regarding his unemployment status when he filed his DIB claim and seemingly suggests that the ALJ was looking unfavorably upon him for receiving unemployment benefits when he claimed to be disabled. While the ALJ noted that plaintiff indicated in his disability report that he stopped working since he was laid off and not due to his conditions, the ALJ's point was that despite plaintiff's long history of having several conditions, he did not stop working because of these conditions. (Tr. 35).

Thus, the ALJ's assessment and the medical record belies plaintiff's

credibility arguments. The ALJ explained in much detail why he was finding plaintiff not entirely credibility, including with respect to his complaints of pain, and cited many bases for his findings. The ALJ properly concluded that plaintiff's complaints were not consistently supported by medical treatment records. In light of these conflicts in the evidence, the ALJ as fact-finder, was entitled to give greater weight to the objective medical evidence which did not support plaintiff's claims. Recognizing that the "substantial evidence" standard of review prescribed by statute is a deferential standard of review, which is met by less than a preponderance of evidence but more than a mere scintilla of proof, the court concludes that the ALJ's decisions assessing plaintiff's credibility, including his alleged ability to function due to his impairments, was supported by substantial evidence.

### B. Credibility of Plaintiff's Treating Physicians

As his next assignment of error, plaintiffs claims that the ALJ did not properly evaluate the opinions of his treating physicians. Specifically, plaintiff argues that the ALJ did not properly assess the medical opinions of Dr. Silversteen and Dr. Esham, two of his treating physicians, by assigning them only limited weight. (Tr. 36-37).

The regulations set forth at 20 C.F.R. §404.1527(a)(2) and §416.927(a)(2), define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a

claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R §404.1527(c) and §416.927(c).

Where the ALJ finds that no treating source opinion is entitled to controlling weight, as in the instant case, the regulations provide that the weight of all non-controlling opinions by treating, non-treating, and non-examining medical sources should be evaluated based on certain factors. Those factors include the examining relationship, the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the record as a whole, and the medical source's specialization. 20 C.F.R. §404.1527(c)(1-5). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his attention, including "the extent to which an acceptable medical source is familiar with the other information in [the] case record." 20 C.F.R. §404.1527(c)(6). *See Markoch v. Colvin*, 2015 WL 2374260, at *6 (M.D.Pa. May 18, 2015).

Additionally, the ALJ must consider all of the relevant evidence and give a clear explanation to support his findings." Fargnoli, 247 F.3d at 40-41 (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)). If the ALJ discounts certain evidence, he must give some indication

of the reasons for discounting that evidence. " [Fargnoli, 247 F.3d at 43](). While the ALJ may choose whom to credit in his analysis, he "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 316-18 (3d Cir. 2000). The ALJ has the duty to adequately explain the evidence that he rejects or to which he affords lesser weight. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009) (holding that because the ALJ did not provide an adequate explanation for the weight he gave to several medical opinions, remand was warranted). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." *Morales v. Colvin*, 2016 WL 907743, at \*8–9 (M.D. Pa. Mar. 2, 2016) (quoting *In re Moore v. Comm'r of Soc. Sec.*, Civ. No. 11-3611, 2012 WL 2958243, at \*2 (D.N.J. July 19, 2012) (citing *Burnette v. Comm'r of Soc. Sec.*, 202 F.3d 112, 119-20 (3d Cir. 2000)).

Initially, the temporary disability check-box forms completed by plaintiff's physicians with respect to plaintiff's Delaware State welfare benefits are not determinative. In particular, Dr. Simmons, Dr. Dresser, Dr. Ashby, and Dr. Silversteen opined that plaintiff could not work on a full-time basis and was disabled for various periods of time. These forms are found in the record as follows: Dr. Simmons (Tr. 310); Dr. Dresser (Tr. 437, 438); Dr. Silversteen (Tr. 644, 889); and Dr. Ashby (Tr. 884).

No doubt that the opinions of plaintiff's treating physician are generally entitled to significant weight. The Third Circuit has "long accepted" that the

findings of a treating physician "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citations omitted). The regulations as well as courts require the ALJ "give good reasons for the amount of weight given to a treating physician's opinion." Fargnoli, 247 F.3d 42-44; *see also* 20 C.F.R. §404.1527(d)(2). A treating physician's opinion can be rejected by the ALJ based on contradictory medical evidence. *See* Frankenfield, 861 F.2d at 408. The ALJ discussed the stated forms. Here, the ALJ afforded proper weight to the opinions. He gave them limited weight since he noted that they were form opinions "that cited to no specific clinical examination findings or provided any specific work related functional limitations that provide the basis for these opinions." (Tr. 36). Additionally, "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

The ALJ also discussed the other medical opinions offered by treating physicians and he explained the reasons for the weight he afforded these opinions. The ALJ considered Dr. Silversteen's June 22, 2014 report in which he found plaintiff's limitations prevented him from sitting for two hours, total, over a workday, required him to use a cane to walk and, prevented him from sitting or standing for more than five minutes per hour at a time. (Tr. 964-67). The ALJ gave limited weight to Dr. Silversteen's opinion and found that he

overestimated the degree of plaintiff's limitations by greatly relying upon plaintiff's subjective complaints. An ALJ "may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted." Morris v. Barnhart, 78 Fed.Appx. 820, 824–25 (3d Cir. 2003). The ALJ also found that the doctor's opinion was contrary to plaintiff's medical records which did not support such a degree of limitations since the records did not contain "any persistently abnormal clinical examination findings" that reflected such limitations. (Tr. 36). Further, as defendant points out, (Doc. 19 at 21), Dr. Silversteen's own treatments notes contradicted some of his limitation findings since his records found that "plaintiff's MRIs of the cervical and lumbar spine, along with EMG testing, were all 'unremarkable'", (Tr. 930), Dr. Silversteen's exam of plaintiff showed that he "had full motor strength [5/5 throughout] despite an antalgic gait, grossly intact sensory function, and no evidence of fasciculations", (Tr. 932), and that Dr. Silversteen noted that plaintiff's lower back pain and his claims of extremity cramping and pain and stiffness had "unclear etiology." (Tr. 932). "[A]n ALJ may give little weight to a physician's opinion that is inconsistent with the medical evidence of record and with her own examination findings." Antoniolo v. Colvin, 208 F.Supp.3d 587, 596 (D.Del. 2016) (citing Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir.1991) (holding that an unsupported diagnosis is not entitled to significant weight)).

Thus, the ALJ gave reasons why he did not give controlling weight to Dr. Silversteen's opinions and substantial evidence supports the weight which the ALJ afforded these opinions.

The ALJ also considered Dr. Esham's June 2014 statement, authored after only treating plaintiff for four months, (i.e., since February 2014), finding that plaintiff had significant limitations, including that he could not sit for more than 15 minutes at a time, could not stand for more than 15 minutes at a time, or sit for two hours in total during a workday. Dr. Esham also indicated that plaintiff would need to elevate his legs 95% with prolonged sitting, take unscheduled breaks, shift his position at will, required a cane, and would be off task 25% or more at work. (Tr. 1008-1009). The ALJ gave limited weight to Dr. Esham's opinions since he found that the doctor overestimated the degree of plaintiff's limitations by greatly relying upon plaintiff's subjective complaints and his limitations which were not entirely credible. Also, as discussed above, despite the doctor's finding that plaintiff's concentration was limited due to pain, plaintiff's exams showed that his concentration was normal. Further, the ALJ found that the doctor's opinion was inconsistent with plaintiff's "medical records on a longitudinal basis" which showed "normal strength in the upper and lower extremities, no evidence of muscle atrophy, no persistent spasms or fasciculation, a lack of an abnormal gait on a persistent basis, and the lack of any persistently documented lower extremity swelling." (Tr. 36-37). The limitations which Dr. Esham found regarding

plaintiff's hands were also accounted for in the ALJ's RFC determination. Thus, the ALJ specified how Dr. Esham's opinions were not supported by plaintiff's medical records. Indeed, "[t]he decision to deny great weight to a treating source opinion must be supported by objective medical evidence." Griffies v. Astrue, 855 F.Supp.2d 257, 274 (D.Del. 2012). Also, the ALJ properly rejected Dr. Esham's opinions based on contradictory medical evidence. *See* Frankenfield, 861 F.2d at 408.

As such, the ALJ gave precise reasons why he did not give controlling weight to Dr. Esham's opinions and substantial evidence supports the weight which the ALJ afforded these opinions.

### C. The ALJ's RFC Findings

Finally, plaintiff contends that the ALJ erred in his RFC findings by determining that there was other work in the national economy that he could perform. The crux of plaintiff's argument is that the ALJ should have accepted his treating physician's opinions as well as his own statements, and that he should have included the limitations stated therein in his RFC findings and in the hypothetical he posed to the VE. Plaintiff states that if the ALJ included the stated limitations, then the VE would have found plaintiff could not perform any jobs, and the ALJ would have had to find him disabled.

Plaintiff states that five of his treating physicians issued opinions that he was unable to work for various amounts of times during 2011 to 2014. (citing Tr. 310, 437-438, 644, 883, 884, 889). He states, as discussed above, that

"Drs. Silversteen and Esham both issued more detailed Medical Statements in 2014 stating that [he] would not be able to perform a full range of sedentary work and would have limitations in sitting, standing and walking", and that "[b]oth physicians believed that [he] would be off task 25% [or more] of the work day due to his pain. (Doc. 17 at 24) (citing Tr. 967, 1010 & Tr. 964-965, 1008).

No doubt that the VE admitted that if plaintiff missed two days per month of unscheduled time at work due to illness, it would not be accepted by an employer and would result in his termination. The VE also stated that if an individual was off task 25% or more during a workday, there would be no jobs that such a person could perform. She also indicated that a 15% reduction in productivity due to impairments by a person would preclude that person from working. (Tr. 71).

As the court in Antoniolo, 208 F.Supp.3d at 597, explained:

A hypothetical question must include all of the claimant's "credibly established limitations." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Accordingly, a limitation that is supported by medical evidence, and "otherwise uncontroverted in the record," must be included in the hypothetical. Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir.2014). "However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical." *Id*.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis." *See* Social Security Ruling 96–8p, [61 Fed.Reg. 34475](61 Fed.Reg. 34475).

A "regular and continuing basis" contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. *Id.;* 20 C.F.R. §404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In determining a plaintiff's RFC, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. §404.1545(a). Also, the responsibility for determining a plaintiff's residual functional capacity at the hearing level is reserved for the ALJ. 20 C.F.R. §404.1546. The final responsibility for determining the RFC is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §404.1527(e)(2), (3).

The "ALJ generally must accept evidence from a vocational expert, who, based on the claimant's age, education, work experience, and RFC, testifies whether there are jobs for such a person in the national economy." *Morgan v. Barnhart*, 142 Fed.Appx. 716, 720-21 (4th Cir. 2005).

At first blush, as discussed above, substantial evidence supported the ALJ's evaluations regarding the credibility of plaintiff as well as the weight he afforded the opinions of plaintiff's treating physicians. Thus, the ALJ was not required to accept the degrees of limitations stated by plaintiff and by his

treating physicians and, he was not required to rely on the VE's testimony that plaintiff was precluded from working if he had these limitations. As such plaintiff's final argument fails on this basis alone. *See* Antoniolo, 208 F.Supp.3d at 597 ("Because the ALJ did not err in giving little weight to the opinions of plaintiff's treating physicians, for the reasons explained above, the hypothetical questions were not deficient for the reasons plaintiff claims.") (citation omitted).

Moreover, SSR 96-8p guides on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The Ruling provides that the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. By properly examining the claimant's specific functional abilities, the ALJ determines whether a claimant can perform his past relevant work, what a claimant's appropriate exertional level is, and whether a claimant is capable of doing the full range of work at the exertional level the ALJ finds he can perform.

The court finds that the ALJ thoroughly considered plaintiff's statement and testimony regarding his activities, his limitations, his pain and his symptoms, as well as his medical records, the evaluations and opinions of medical providers who examined him, in arriving at his RFC finding. (Tr. 31). The ALJ consider the totality of plaintiff's conditions and then adopted the

limitations he found supported by the entire record in his RFC finding and applied them in his hypothetical question posed to the VE. The hypothetical question which an ALJ poses to a VE is required to accurately reflect the claimant's impairments that are supported by the record. *See* Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Also, it is the ALJ's sole responsibility to determine a claimant's RFC. *See generally* SSR 96-5p. The Court concludes that the ALJ's decisions assessing plaintiff's ability to function despite his various claimed impairments was supported by substantial evidence.

## V.    CONCLUSION

For the reasons stated above, the court finds that the decision of the Commissioner denying plaintiff's application for DIB is supported by substantial evidence. Thus, plaintiff's motion for summary judgment, (Doc. 16), is **DENIED**, and the defendant Commissioner's motion for summary judgment, (Doc. 18), is **GRANTED**. Accordingly, pursuant to 42 U.S.C. §405(g), the decision of the Commissioner will be **AFFIRMED** and, plaintiff's **APPEAL**, (Doc. 1), will be **DENIED**. An appropriate order will be issued.

S/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 8, 2018**

O:\Mannion\shared\MEMORANDA - Delaware Cases\15-1189-01.wpd